**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00396

CATALYST STRATEGIC ADVISORS, LLC, a Colorado limited liability company; and
KONDRUP ENTERPRISES, INC., a Colorado corporation,

        Plaintiffs,

v.

DV CONSULTING, INC., a Connecticut corporation; and
DANIEL VAN DER AUE, an individual,

        Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Catalyst Strategic Advisors, LLC ("Catalyst") and Kondrup Enterprises, Inc. ("KE" and together with Catalyst, "Plaintiffs"), for their Complaint for Declaratory Judgment against Defendants DV Consulting, Inc., and Daniel Van Der Aue (the "Complaint"), allege as follows:

**PRELIMINARY STATEMENT**

1. This is an action for a declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Colorado law. This Complaint seeks a judicial declaration to resolve a dispute over the parties' rights and interests with respect to Catalyst Strategic Advisors, an M&A advisory firm based in Colorado Springs, Colorado. Plaintiff KE is the sole member and exclusive owner of Catalyst. Catalyst recently terminated a consulting engagement with Daniel Van Der Aue ("Van Der Aue") and Van Der Aue's business entity, DV

Consulting, Inc. ("DV Consulting" and together, "Defendants"). Defendants subsequently claimed—for the first time and contrary to all prior representations and communications—an equity interest in Catalyst by falsely representing that DV Consulting and KE operated Catalyst as a joint venture.

2.     Plaintiffs and Defendants have adverse legal interests with respect to this dispute concerning valuable legal rights.

3.     An actual controversy of a justiciable nature presently exists between Plaintiffs and Defendants. Plaintiffs wish to determine the definite and concrete issue of ownership in Catalyst. Specifically, Plaintiffs seek an adjudication of Defendants' lack of ownership.

4.     The controversy is of sufficient immediacy to justify the issuance of a Declaratory Judgment.

5.     Plaintiffs have a reasonable apprehension of being sued by Defendants and declaratory relief will be useful to resolve this matter between the parties.

## PARTIES, JURISDICTION, AND VENUE

6.     Catalyst is a Colorado limited liability company with its principal place of business at 640 Southpointe Court, Suite 230, Colorado Springs, Colorado 80906.

7.     Catalyst is a single-member LLC owned and operated by KE.

8.     KE is a Colorado corporation with its principal place of business at 640 Southpointe Court, Suite 230, Colorado Springs, Colorado 80906.

9.     KE is a closely held corporation. KE's sole shareholder, Joe Kondrup, Jr. ("Kondrup") is an individual who resides in Colorado Springs, Colorado.

10. DV Consulting is a Connecticut corporation with its principal place of business at 8 Pequot Trail, Westport, Connecticut 06880.

11. DV Consulting is a closely held corporation with a single shareholder: Van Der Aue.

12. Van Der Aue is an individual who resides in Westport, Connecticut.

13. The Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a)(2), as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14. Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(2) because the business entity central to the parties' ownership dispute is located in this judicial district.

## GENERAL ALLEGATIONS

### I. Kondrup Enterprises Forms Catalyst in 2010.

15. Kondrup is the exclusive shareholder, director, and president of KE.

16. In 2010, KE formed Catalyst to provide clients high-value investment banking, M&A, and strategic advisory services. KE is the sole member and 100% owner of Catalyst.

17. Kondrup is the face of and force behind Catalyst; when clients hire Catalyst, they are really hiring Kondrup. Kondrup's experience, business relationships, and sales acumen drive all business at Catalyst: he is the founder, the CEO, the dealmaker, the negotiator, the rainmaker, and the salesman. Indeed, without Kondrup, there could be no "Catalyst."

18. As a result, Catalyst's brand identity and recognition is the product of Kondrup's leadership and reputation.

## II. Catalyst Hires DV Consulting.

19. After Catalyst's formation, the company informally engaged Van Der Aue's business, DV Consulting, to perform analytic services.

20. Catalyst paid DV Consulting service fees for consulting services involving business analytics that Van Der Aue provided to Catalyst.

21. Through its services, DV Consulting provided services for Catalyst's business through individual projects. Accordingly, Catalyst paid DV Consulting upon project completion.

22. Pursuant to the parties' fee arrangement, DV Consulting's service fee was determined pursuant to a defined calculation designed to fairly and appropriately compensate DV Consulting for its direct support of specific client projects.

23. In the early days of the consulting relationship, and until the onset of the COVID-19 pandemic, DV Consulting worked with Catalyst (alongside Catalyst's employees, all hired and paid solely by KE) to provide client services.

## III. KE and DV Consulting Did Not Share the Same Goals or Commitment to Catalyst.

24. Kondrup was the sole negotiator of and signatory to all client engagement letters and business contracts between KE and/or Catalyst and vendors and professional advisors.

25. Kondrup conducted all business for Catalyst and was financially and legally responsible for all matters related to Catalyst.

26. DV Consulting never negotiated engagement letters, deals, contracts, or fees. These matters were all in Kondrup's exclusive control.

27. In light of the discrete nature of its role at Catalyst, DV Consulting **never**:

    a) signed engagement letters with clients on behalf of Catalyst;

  b) held veto power with respect to the clients and projects Kondrup brought on at Catalyst;

  c) knew what Catalyst paid in operating or overhead costs;

  d) knew what KE paid in operating or overhead costs;

  e) had access to Catalyst's comprehensive financials;

  f) had access to KE's comprehensive financials;

  g) had decision-making authority or discretionary power over Catalyst's overhead costs or expenditures;

  h) had decision-making authority or discretionary power over KE's overhead costs or expenditures;

  i) received a company credit card (instead, like all other 1099 contractors, DV Consulting submitted expense reports for reimbursement from Catalyst); or

  j) executed contracts on behalf of Catalyst.

28. Neither Catalyst nor KE ever gave DV Consulting access to, or provided DV Consulting with, Catalyst's or KE's comprehensive financials.

**IV. DV Consulting Did Not Share in Catalyst's Losses or Liabilities.**

29. Given that KE owns 100% of Catalyst, DV Consulting has no ownership stake in Catalyst. Indeed, DV Consulting has *never* made a capital contribution to Catalyst.

30. Van Der Aue insisted that DV Consulting receive payment as a 1099 independent contractor.

31. Catalyst's payroll runs through KE. In other words, Catalyst employees receive their paychecks from KE, not from Catalyst.

32. DV Consulting never issued payroll for Catalyst employees or contractors.

33. Kondrup, as KE's only shareholder, alone is and always has been exclusively responsible for Catalyst's losses.

34. Kondrup alone is and always has been exclusively responsible for a line of credit used for business purposes.

35. When Catalyst required capital to fund payroll or operations, Kondrup personally loaned the funds necessary to meet such expenses.  In fact, whenever Catalyst needed money, it was Kondrup that stepped in to provide financial support.

36. Neither DV Consulting nor Van Der Aue ever joined in Kondrup's efforts to keep Catalyst funded or to bridge funding when business was slow.

37. Neither DV Consulting nor Van Der Aue ever assumed any liability for credit used for business purposes.

38. DV Consulting unequivocally rejected any opportunity to participate in equity ownership in Catalyst.

39. Neither Plaintiffs nor Defendants ever referred to Catalyst as a potential joint venture.

40. DV Consulting cited, by way of disclaiming any possible ownership in Catalyst when suggested as a risk and profit-sharing construct, Van Der Aue's preference to "leave things as they were."

41. DV Consulting sought to remain independent and unencumbered by financial risks, business risks, or bureaucratic policies related to Catalyst.

42. In addition to its wholesale rejection of equity ownership, DV Consulting refused to execute controlling documents or contracts utilized by Catalyst for consultants and employees.

DV Consulting did not want the legal or financial responsibility or exposure risks that are concomitant with Catalyst's business model. Ostensibly, DV Consulting preferred to continue making consulting fees without any commitment, downside, or risk.

43. In sum, Catalyst's obligations were borne exclusively by KE (i.e., Kondrup), whereas DV Consulting's services and degree of "commitment" stopped short of accepting any share of responsibility for Catalyst losses or liabilities.

## V. Catalyst Ended the Consulting Engagement Because DV Consulting's Services and Van Der Aue's Capabilities No Longer Meet the Needs of Catalyst's Business.

44. In the early years of the consulting relationship, DV Consulting worked in an in-depth capacity on nearly all projects served by Catalyst. From the outset, however, Kondrup made all business, financial, client, and other vital decisions with respect to Catalyst.

45. Following the onset of the COVID-19 pandemic, Catalyst navigated the challenges of an amorphous business environment. During this time and consistent with historic practice, Kondrup led all business and client development activities, funded operations, and retained all Catalyst staff. Under Kondrup's leadership, Catalyst ultimately emerged a viable business.

46. As a result of Kondrup's exhaustive efforts, including developing client relationships; personally interacting with and managing each Catalyst project; negotiating client engagements; and simultaneously managing several complex, multi-faceted negotiations, Catalyst's fee generation increased to new levels.

47. After a challenging year in 2020, Catalyst grew in 2021 and earned record fees in 2022. During this period, Catalyst expanded its staff of paid professionals, and DV Consulting's

involvement in Catalyst projects decreased considerably. Thus, the historic fee arrangement between Catalyst and DV Consulting was no longer representative of the value of the services rendered.

48. As Catalyst is only paid upon the completion of transactions, its business model requires strategically stacked client projects and client development efforts to hedge against various obstacles to project completion (e.g., untimely delays). By maintaining a robust pipeline, the firm increases its ability to generate revenue.

49. In 2022, Kondrup informed Van Der Aue of Kondrup's vision for Catalyst's future, including business development plans geared toward growth and transitioning Kondrup's role as the sole rainmaker for the firm to other capable leaders.

50. Kondrup recognized that the viability and future success of his business required growth and the expansion of Catalyst's team of M&A and analytic professionals capable of developing and maintaining client relationships.

51. Continuing Catalyst's relationship with Van Der Aue and DV Consulting was inconsistent with this vision for Catalyst's future.

52. Throughout 2022, a variety of developments involving Van Der Aue underscored the fact that his core competencies are purely analytical. Despite years of exposure through his analytical consulting work serving Catalyst as DV Consulting, Van Der Aue's skillset and personality are simply incompatible with client development and dealmaking and the situations and complexities that arise therein.

53. Accordingly, in January 2023, Catalyst informed Defendants of its intent to discontinue its consulting arrangement with DV Consulting and Van Der Aue.

54. Soon thereafter, Catalyst formally terminated its relationship with Defendants.

## EXISTENCE OF AN ACTUAL CONTROVERSY

55. Despite disclaiming any contract, partnership, or ownership in Catalyst for nearly a decade, Van Der Aue suddenly changed his story: Van Der Aue now claims that DV Consulting operated Catalyst as a joint venture with KE since 2013.

56. Thus, there is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

57. Based on the foregoing, a justiciable controversy exists between Plaintiffs and Defendants as to the rights, duties, and responsibilities of the parties as related to (1) the existence of an alleged joint venture in Catalyst, and (2) ownership of Catalyst.

58. Absent a declaration, Defendants will continue to wrongfully allege that DV Consulting co-owns Catalyst as a joint venture with KE, and thereby cause Plaintiffs irreparable injury and damage.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment of Entity Ownership)

59. The preceding allegations of the Complaint are incorporated by reference as though set forth fully herein.

60. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of entity ownership in Catalyst.

61. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding ownership of Catalyst and enforce the same against Defendants' attempts

to assert equity interests in Catalyst.

62. Plaintiffs are entitled to a declaratory judgment that Catalyst is not a joint venture and DV Consulting and Van Der Aue are not owners of or co-venturers in Catalyst.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief:

A. An order prohibiting Defendants DV Consulting and Daniel Van Der Aue from asserting ownership rights or interests in Catalyst;

B. An order adjudging that DV Consulting and Van Der Aue are not entitled to any ownership stake in Catalyst;

C. A judgment that Defendants be restrained and enjoined from alleging, representing, or otherwise stating that Catalyst is a joint venture or from instituting or initiating any action or proceeding alleging that Defendants have any ownership rights in Catalyst;

D. An order declaring Plaintiffs as the prevailing part and awarding Plaintiffs their reasonable attorneys' fees;

E. An order requiring Defendants to pay all fees, expenses, and costs associated with this action; and

F. Such other and further relief as the Court may deem proper and just.

Dated:   February 10, 2023

>	*/s/ Brett C. Painter*
>	Brett C. Painter
>	DAVIS GRAHAM & STUBBS LLP
>	1550 17th Street, Suite 500
>	Denver, CO 80202
>	Telephone: 303-892-9400
>	Facsimile: 303-893-1379
>	Email: brett.painter@dgslaw.com
>
>	*Attorneys for Catalyst Strategic Advisors, LLC and Kondrup Enterprises, Inc.*

- 11 -